
FILED
*August 28, 2015*
Third Court of Appeals
Jeffrey D. Kyle
Clerk

ACCEPTED
03-14-00660-CV
4034632
THIRD COURT OF APPEALS
AUSTIN, TEXAS
2/5/2015 11:53:54 AM
JEFFREY D. KYLE
CLERK

No. 03-14-00660-CV

RECEIVED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
2/5/2015 11:53:54 AM
JEFFREY D. KYLE
Clerk

# In The Court of Appeals For the Third District of Texas at Austin

CRAIG ZGABAY AND TAMMY ZGABAY,

Appellants,

v.

NBRC PROPERTY OWNERS ASSOCIATION,

Appellee.

On Appeal from the 433rd District
Court of Comal County, Texas
Trial Court Cause No. C2014-0501C

### AMENDED REPLY BRIEF OF APPELLANTS

J. Patrick Sutton
SBOT 24058143
1706 W. 10th Street
Austin Texas 78703
Tel. (512) 417-5903
Fax. (512) 355-4155
*jpatricksutton@jpatricksuttonlaw.com*

Counsel for Appellants

February 5, 2015

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................... 1

FACTS IN REPLY .................................................................................... 3

ARGUMENT AND AUTHORITIES ........................................................ 4

   I.  "Single family" does not restrict or relate to serial residency, occupancy, or leases ........................................................................ 4

   II.  Multi-owner homes are equivalent to STR's .................................. 6

   III.  The Zgabays didn't waive the owner-occupancy argument ......... 7

   IV.  The meaning of the injunction is the problem .............................. 9

CONCLUSION ....................................................................................... 11

CERTIFICATE OF SERVICE ............................................................... 12

CERTIFICATE OF COMPLIANCE ...................................................... 12

# INDEX OF AUTHORITIES

**Cases**

*Benard v. Humble*, 990 S.W.2d 929 (Tex. App.—Beaumont 1999, pet. denied) ....................................................................................... 11

*McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337 (Tex. 1993) ............................................................................................... 7, 8

*Vaughn v. Drennon*, 202 S.W.3d 308 (Tex. App.-Tyler 2006) ......... 10

*Wilmoth v. Wilcox*, 734 S.W.2d 656 (Tex. 1987) ................................ 1

**Statutes and Rules**

Tex. Bus. Orgs. Code § 101.052 ............................................................ 6

Tex. Prop. Code § 92.010 ...................................................................... 6

**Other Authorities**

NBRC POA DCCRs, Draft 2015-1-21 ................................................... 3

## INTRODUCTION

Homebuyers buy into restrictive covenants. Buyers have many choices; the variety of restrictive covenants is endless. *See, e.g.*, *Wilmoth v. Wilcox*, 734 S.W.2d 656, 658 (Tex. 1987) ("[J.B. Overturf], his brother and a surveyor named Hodges sat around the table and created the restrictions"). And the restrictions can always be found and read in the county records.

Some restrictive covenants clearly and unambiguously limit the duration of leasing so that anyone can comprehend the limitations on their property rights. CR43, 46-47. Some restrictive covenants regulate leasing little if at all. That is the case here, where the covenants do not differentiate leasing and owner-residency apart from a brief mention of signage. And though the restrictive covenants in this case *do* address duration issues in some residency-related contexts, they *do not* do so as regards leasing. Appendix 0016, 0018.

The HOA and the Zgabays are in accord that the restrictive covenants are clear and unambiguous, but the HOA's takeaway is that the conspicuous omissions restrict the Zgabays' leasing rights. Furthermore, that the conspicuous omissions impose, very precisely, a *minimum* duration, not a *maximum* duration; that the

1

minimum duration has no fixed number; and that the minimum duration applies to tenant "residents" but not to owner "residents." In the HOA's view, not only the complete absence, but even the conspicuous omission of lease duration restrictions, must be interpreted against property owners.

The HOA never does address the profound question at the heart of this case: How could the Zgabays or anyone else know that the complete and conspicuous absence of duration limits equates to a ban on leasing (but not owner residency) for some undefined minimum term? Restrictive covenants exist for precisely the purpose of telling people in readily comprehensible terms what they can and cannot do with their land. *Their land.*

And restrictive covenants can readily be amended to redefine all the use parameters, according to the collective democratic will of the owners. All the HOA in this case had to do was get together a community vote on the issue of short-term rentals. Instead its board, acting alone, prestidigitated something from nothing and declared it the law.

## FACTS IN REPLY

The record does not support the HOA's assertion that the Zgabays did not read the restrictive covenants *at all* until after they purchased. Brief of HOA at 1. Mr. Zgabay testified merely that long after he bought his land and built a house on it, he read the restrictive covenants concerning leasing restrictions. CR50. Short-term rentals via the web didn't exist when the Zgabays bought their land in 2000.

The Zgabays moved below to strike the HOA's affidavits concerning alleged misbehavior by tenants, and the Zgabays submitted evidence rebutting the HOA's allegations. CR104-105, CR112.

The Zgabays ask this Court to take judicial notice of the fact that the HOA in January, 2015, published on its website draft amendments to the restrictive covenants that would bar rentals with a duration of 30 days or less. NBRC POA DCCRs, Draft 2015-1-21 §§ 1.12(e), 3.16.[1] The various documents published on the site establish that it is the HOA itself, not a third party, that is making the proposal. In addition, all indications on the non-password-protected web page are that the Appellee owns and is

---

[1] Accessed Feb. 4, 2015, at:
http://riverchasepoa.org/river_chase_poa_ee/index.php?/riverchase/home_page/

3

responsible for the content therein and intends to disseminate the information broadly. In addition, the Whois record for http://riverchasepoa.org indicates that the Appellee in this case is, in fact, the registrant for the website in question.[2] Finally, meeting minutes published therein reference "the current lawsuit" and that amendments to the restrictive covenants are intended "to clarify short-term rental language in the DCCRs," a clear reference to this case.[3] The Zgabays offer this fact to show that drafters of restrictive covenants can and do employ specific numbers to denote minimum allowed rental durations so that everyone is clear what is intended.

## ARGUMENT AND AUTHORITIES

### I.  "Single family" does not restrict or relate to serial residency, occupancy, or leases

The HOA asserts in two places that "[e]ntering into a series of short-term rentals with separate families (or other groups) is not a 'single family' use." Brief of HOA at 12, 14. That is preposterous. Investor-owners *always* engage in serial leasing, whether for days, weeks, months, years, or decades at a time.

---

[2] Accessed Feb. 5, 2014, at: http://whois.domaintools.com/riverchasepoa.org
[3] Accessed Feb. 5, 2015, at:
http://riverchasepoa.org/river_chase_poa_ee/images/riverchase/2015_01_12_BOD_mtg.pdf

4

Some people purchase shares in properties precisely for serial short-term use on the part of multiple owners, and that's functionally equivalent to serial leases. The HOA's argument demands the conclusion that once someone has purchased a home and lived in it, they can never lease it to someone else; or having leased it out once, they can never lease it out again. The HOA has focused very narrowly on one fact pattern -- the owner-occupied, one-owner subdivision dwelling not even implicated by this case -- without taking into account the many ways in which property is owned and used. Based on one narrow conception of "use" that is nowhere accorded special status in the restrictive covenants themselves, the HOA would literally limit a home's use to *one single family*!

This points up, again, how the HOA shies away from explaining how a point on the timeline changes the character of an ordinary family's use of a dwelling for sleeping, eating, brushing teeth, and watching the Super Bowl. Some deed restrictions *do* declare a duration marker. Even the HOA's proposed restrictions contain a clear minimum duration. The current deed restrictions simply do not, and that is the crux of this case.

## II.    Multi-owner homes are equivalent to STR's

Any number of unrelated persons can be co-owners of a home. Multiple owners can divvy up the time shares into small increments. That can be accomplished formally by placing ownership in an LLC, then using a detailed company agreement to set out co-owners' time-shares. The company agreement can even permit shares to be transferred or conveyed. *See generally,* Tex. Bus. Orgs. Code § 101.052.

Texas law restricts the maximum occupancy of leased homes but not owner-occupied homes. Tex. Prop. Code § 92.010 (3 adults per bedroom).

There is no functional difference between LLC-owned homes with time-sharing co-owners and one-owner homes leased serially to different tenants. Different paperwork is involved, but from the perspective of a neighbor with concerns about traffic, maximum occupancy, noise, or any other aspect of the human incidents of dwelling-house habitation, both legal arrangements involve a succession of different families moving in and out for short terms in a furnished home. In the case of the home with many owners, there does not even appear to be a statutory occupancy limit as there is for a leased home, making the arrangement potentially worse from a neighbor's perspective. The

problem with all the HOA's arguments in this case is that they depend upon a distinction between tenants and owners that the restrictive covenants do not support. There are many legal ways to address the problems caused by bothersome neighbors, whether owners or tenants, but torturing the restrictive covenants is not one of them.

### III. The Zgabays didn't waive the owner-occupancy argument

The HOA contends it didn't get fair notice from the Zgabays' motion for summary judgment of the Zgabays' contention that the restrictive covenants do not bar short-term rentals. Brief of HOA at 13. But there was no brief apart from the motion in this case, which is the issue dealt with in the *McConnell* decision the HOA cites. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 338 (Tex. 1993) ("This case presents the question whether grounds for summary judgment must be expressly presented in the motion for summary judgment itself or whether such grounds may be presented in . . . a brief filed contemporaneously with the motion."). Furthermore, the HOA filed a motion for summary judgment involving all the same issues.

In any event, *McConnell* requires a party to "address the cause of action" in a meaningful way so as to give fair notice what

7

grounds a party is asserting. 858 S.W.2d at 340 (internal citation omitted). The grounds for the Zgabays' case has always been that the restrictive covenants do not impose duration limits on leasing. Their motion for summary judgment argues their cause of action for a declaratory judgment as to the meaning of the restrictive covenants. It strains credulity for the HOA to assert it was confused what the Zgabays were contending, which is the rationale behind the rule in *McConnell*. *Id*. at 343-44. The parties vigorously argued their respective mirror-image DJ claims in the motions and hearing below.

There is no authority that a summary judgment motion must refine every argument of counsel to the $n^{\text{th}}$ degree or anticipate every conclusion the trial court might draw from the parties' arguments. If that were so, then decisive arguments made at hearing would be waived merely because there was no reporter's record.

The Zgabays raised the owner-occupancy issue in their response to the HOA's cross-motion, if not developed to the degree it has been on appeal. CR104. They also argued at length that the restrictive covenants contain no duration limits, and their arguments on appeal are extensions of those and, more

fundamentally, stem from the same few words in the contract that have consistently been the basis for contention. The arguments the Zgabays honed for this appeal arise as well from the trial court's order, which either does or does not contain the errors in logic and contract interpretation the Zgabays have asserted. As a general proposition, it would hamstring lawyers if they were not allowed to refine and extend on appeal the arguments made at the trial court level. That is particularly true here, where the bone of contention has always been, both below and on appeal, the meaning of the contract on a narrow issue in contention (whether short-term rentals are a residential use), and where the record plainly demonstrates extensive argument below on an important issue of law for which there is no clear appellate precedent.

## IV. The meaning of the injunction is the problem

The Zgabays have not asserted that the "reasons" for the injunction aren't clear. Brief of HOA at 18. They are: the trial court agreed with the HOA that short-term rentals violate the restrictive covenants. It's the vagueness of the injunction that's objectionable. A permanent injunction "must be definite, clear, and concise, leaving the person enjoined in no doubt about his

duties, and should not be such as would call on him for interpretations, inferences, or conclusions." *Vaughn v. Drennon*, [202 S.W.3d 308](), 316 (Tex. App.-Tyler 2006). The *Vaughan* court invalidated a permanent injunction because it "[was] not clear and [did] not contain sufficient detail for the Vaughns to determine exactly what the court want[ed] them to do." *Id.* at 317.

The injunction in this case is not clear and does not contain sufficient detail for the Zgabays to determine exactly what the trial court wants them to do. Many restrictive covenants and local ordinances provide a numerical definition for minimum rental terms because owners need certainty how to avoid onerous legal consequences. The HOA's own draft amendments to the restrictive covenants make the proposed minimum rental duration clear. Undersigned counsel has litigated cases where the owners in the HOA mooted the STR dispute mid-stream by amending the restrictive covenants to impose a specific minimum duration for rentals. The restrictive covenants in this case are full of specific numerical deadlines for various things, just not leases. Even the *Benard* decision that the HOA relies upon says 90 days, which at least has the virtue of clarity. *Benard v.*

*Humble*, [990 S.W.2d 929](#) (Tex. App.—Beaumont 1999, pet. denied).

The Zgabays urge this court, if it concludes that typical, bare-bones "residential use" wording in and of itself bars short-term rentals, to give clear guidance to the many property owners around the state who stand to be affected.

## CONCLUSION

HOA's are, in effect, local-local government that subdivision owners control. Restrictive covenants are mini-Constitutions that owners pay money to live under. Courts that substitute their views for those of the subdivision homeowners acting collectively do a disservice to those people and their local-local democratic processes.

Respectfully submitted,
*/s/ JPS*
J. Patrick Sutton
Texas Bar No. 24058143
1706 W. 10th Street
Austin Texas 78703
Tel. (512) 417-5903
Fax. (512) 355-4155
*jpatricksutton@*
*jpatricksuttonlaw.com*

Attorney for Appellants

11

## CERTIFICATE OF SERVICE

I certify that on February 5, 2015, per T.R.A.P. 6.3(b), a true and correct copy of this amended brief was served by efiling and email on:

Tom Newton
Allen Stein & Durbin, P.C.
6243 IH-10 West, 7th Floor
San Antonio, Texas 78201
*TNewton@ASDH.com*

Brian Hensley
Thompson, Coe, Cousins & Irons, L.L.P.
701 Brazos, Suite 1500
Austin, Texas 78701
Ph (512) 708-8200
Fax (512) 708-8777
*BHensley@thompsoncoe.com*

/s/ *J. Patrick Sutton*
Attorney for Plaintiffs-Appellants

## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in Century Schoolbook 14-point for text and 12-point for footnotes. Spacing is expanded by .6 point for clarity. This document also complies with the word-count limitations of Tex. R. App. P. 9.4(i), if applicable, because it contains **2075** words, excluding any parts exempted by Tex. R. App. P. 9.4(i)(1).

/s/ *J. Patrick Sutton*
Attorney for Appellants